# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LESLIE M. LAWSON, | |
| Plaintiff, | CIVIL ACTION NO. 1:15-cv-02450 |
| v. | (CALDWELL, J.)<br>(SAPORITO, M.J.) |
| DAUPHIN COUNTY WORK<br>RELEASE, et al., | |
| Defendants. | |

## <u>REPORT AND RECOMMENDATION</u>

This is a *pro se* prisoner civil rights action. The plaintiff, Leslie M. Lawson, asserts federal civil rights claims against a county probation office, a county work release center, and several probation officers arising out of their allegedly wrongful conduct toward Lawson while she was sentenced to probation and a county intermediate punishment program ("IPP") under their supervision. Lawson has been granted leave to proceed *in forma pauperis* in this action. At the time of filing, Lawson was incarcerated at Dauphin County Prison, located in Dauphin County, Pennsylvania, awaiting state probation and IPP revocation hearings.

The defendants have moved for partial dismissal of the action under Rule 12(b)(1) and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

They seek dismissal of the two state agencies in their entirety, and the four individual defendants insofar as they are sued in their official capacities. We recommend that the motion be granted and that the Court also dismiss *sua sponte* the plaintiff's claims against four of the five individual defendants insofar as they are sued in their personal capacities.

## I. BACKGROUND

At the time of the initial allegedly wrongful conduct, it appears that Lawson was under a county IPP sentence, subject to strict supervision by the defendants similar to, but greater than, that imposed on parolees and probationers. *See generally* 42 Pa. Cons. Stat. Ann. § 9804; *Commonwealth v. Wegley*, 829 A.2d 1148, 1152–53 (Pa. 2003) (discussing IPP sentencing, a "sentencing option . . . between probation and incarceration"). That sentence included a condition that she participate in a county work release program for a period of time.

Lawson alleges that in September 2014, while she was residing at the Dauphin County Work Release Center, she was approached by defendant Bernard Adams, an in-house probation officer at the work release center. Adams allegedly handed her a piece of paper with his telephone number on it. Lawson asked him to bring her daily copies of the

*New York Post*, which he did. Adams gave her rides in his black Lincoln SUV, including rides to and from work. He would pick her up after work, buy her dinner, and then return her to the work release center. During these rides, he would discuss "getting together" with Lawson, and he advised her that she should not tell anyone about their interaction.

In October 2014, when Lawson was released from the work release program, but still under IPP supervision, she obtained a cell phone and began interacting with Adams in phone conversations and text messages. Adams arranged to pick her up and took her to a restaurant, where he bought her drinks and invited her to his house, apparently under the pretense that he was considering renting out a bedroom to her as a temporary residence. Adams and Lawson shared beers at his house and watched television. Adams allegedly asked Lawson to spend the night, saying that he wanted to talk about his wife leaving him, but Lawson believed he was attempting to coax her into a sexual liaison. Because of his position as a probation officer, and her position as an IPP supervisee, she alleges that she "felt the need to comply with his advances out of intimidation."

In July 2015, Lawson alleges that she was on probation, under the

supervision of defendant Alan Proper, a Dauphin County probation officer.[1] Lawson violated the terms and conditions of her probation and in discussing the response Proper anticipated recommending to the court, he advised her that he would be recommending two weeks of incarceration at Dauphin County Prison, to be followed by a period at the work release center. Lawson informed Proper of her prior interaction with Adams, advised him that she would be uncomfortable being around Adams again, and inquired whether Adams was still at the work release center. Proper allegedly advised her that Adams was no longer employed at the work release center.

In early September 2015, Lawson appears to have appeared in court for an arraignment in one of her various criminal proceedings. That hearing was postponed, however, and Lawson was instead questioned by two unnamed investigators and defendant Marybeth, a supervisor at the county work release center. The questioning apparently took place in the courtroom, in the presence of the judge presiding over Lawson's revocation

---

[1] Lawson appears to have been under probation or IPP supervision for several different criminal matters at the same time. It is not clear from the complaint which particular criminal matters the described court proceedings concern.

proceedings. Marybeth and the investigators asked questions about Lawson's interactions with Adams; in particular, they asked whether their activity was consensual. Lawson deemed the questions to be "biased and futile" and ended the interview. Her revocation hearing was rescheduled for November 2015.

While she awaited her revocation hearing, Lawson was placed under electronic monitoring. Lawson apparently violated terms and conditions of her release by going outside the approved perimeter of her electronic monitoring bracelet, and her probation officer, Proper, directed her to report to the probation office. On September 10, 2015, she reported to the probation office, where Proper directed her to submit to an instant urine test, directed that Lawson be subjected to a strip search by a non-party female probation officer, and directed that she provide a second urine sample for laboratory testing. While she was meeting with Proper, defendant Muza, another Dauphin County probation officer, allegedly exclaimed at Lawson: "Leslie, were you tricking or prostitut[]ing while you were out of the perimeter of the electronic bracelet[?]" Lawson claims that this statement caused her "mental anguish and embarrassment."

While she was released subject to electronic monitoring, Lawson

alleges that defendant Annemarie, a Dauphin County probation officer, and another non-party probation officer constantly threatened to send her to Dauphin County Prison if she did not comply with the rules and regulations in place for those released under the electronic monitoring program. Lawson claims that these "constant threats" caused her "unnecessary mental anguish." On October 21, 2015, Lawson alleges that, having grown weary of these threats, she removed the electronic monitoring bracelet and reported to the probation officer in charge of the electronic monitoring program. The complaint alleges that Lawson was then incarcerated at Dauphin County Prison, where she remained at the time when she filed both her original and amended complaints.

Lawson's original complaint was received and docketed by the Clerk of Court on December 17, 2015.[2] (Doc. 1). Her amended complaint was

---

[2] Lawson's original complaint is dated November 15, 2015, a few days before a November 19, 2015, hearing in her revocation proceedings. She appears to have mistakenly mailed the complaint to the prothonotary of the county court of common pleas, the prothonotary forwarded it to the clerk of the state supreme court, and the clerk of the state supreme court forwarded it to this Court. Because the statute of limitations does not appear to be implicated, we need not determine the precise date when Lawson's original complaint was constructively filed. *See generally Houston v. Lack*, 487 U.S. 266, 270–71 (1988) (articulating the "prison mailbox rule").

received and docketed by the Clerk on January 26, 2016. (Doc. 10). In her amended complaint, Lawson seeks an order relieving her of supervision by the Dauphin County Adult Probation Office and the Dauphin County Work Release Center, and she seeks compensatory damages for the defendants' allegedly wrongful conduct.

The defendants have moved for partial dismissal of the action for lack of subject matter jurisdiction under Rule 12(b)(1) of the Federal Rules of Civil Procedure, arguing that they are entitled to Eleventh Amendment immunity from suit, and for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing that they are not "persons" subject to suit under 42 U.S.C. § 1983. (Doc. 13; Doc. 14). Lawson failed to file a timely brief in opposition. On March 7, 2016, we entered an order directing Lawson to file an opposition brief on or before March 21, 2016. (Doc. 16). To date, she has filed no response whatsoever to the defendant's motion or our Order of March 7, 2016.

## II.   LEGAL STANDARDS

### A. Rule 12(b)(1) Standard

A Rule 12(b)(1) motion is the proper mechanism for raising the issue of whether Eleventh Amendment immunity bars the exercise of federal

jurisdiction. *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n.2 (3d Cir. 1996) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–100 (1984)). The plaintiff bears the burden of establishing the existence of subject matter jurisdiction when challenged under Rule 12(b)(1). *See Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991). A defendant may challenge the existence of subject matter jurisdiction in one of two fashions: it may attack the complaint on its face or it may attack the existence of subject matter jurisdiction in fact, relying on evidence beyond the pleadings. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000); *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Where a defendant attacks a complaint as deficient on its face, "the court must consider the allegations of the complaint as true." *Mortensen*, 549 F.2d at 891. "In deciding a Rule 12(b)(1) facial attack, the court may only consider the allegations contained in the complaint and the exhibits attached to the complaint; matters of public record such as court records, letter decisions of government agencies and published reports of administrative bodies; and 'undisputably authentic' documents which the plaintiff has identified as a basis of his claims and which the defendant has attached as exhibits to his motion to dismiss." *Medici v. Pocono*

*Mountain Sch. Dist.*, No. 09-CV-2344, 2010 WL 1006917, at *2 (M.D. Pa. Mar. 16, 2010). However, when a motion to dismiss attacks the existence of subject matter jurisdiction in fact, "no presumptive truthfulness attaches to plaintiff's allegations," and "the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Mortensen*, 549 F.2d at 891. Here, the defendants have raised a facial challenge to the existence of subject matter jurisdiction.

### B. Rule 12(b)(6) Standard

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds the plaintiff's claims lack facial plausibility." *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). Although the Court must accept the fact allegations in the complaint as true, it is not compelled to accept "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*,

719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)).

Under Rule 12(b)(6), the defendant has the burden of showing that no claim has been stated. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991); *Johnsrud v. Carter*, 620 F.2d 29, 32–33 (3d Cir. 1980); *Holocheck v. Luzerne County Head Start, Inc.*, 385 F. Supp. 2d 491, 495 (M.D. Pa. 2005). Although a plaintiff is entitled to notice and an opportunity to respond to a motion to dismiss, he has no obligation to do so—he may opt to stand on the pleadings rather than file an opposition. The Court must nevertheless examine the complaint and determine whether it states a claim as a matter of law. *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F2d 168, 174 (3d Cir. 1990). In deciding the motion, the Court may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).

### C. *Sua Sponte* Dismissal Standard

Under 28 U.S.C. § 1915A, the Court is obligated to screen a civil

complaint in which a prisoner is seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a); *James v. Pa. Dep't of Corr.*, 230 Fed. App'x 195, 197 (3d Cir. 2007). The Court must dismiss the complaint if it "fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915A(b)(1). The Court has a similar obligation with respect to actions brought *in forma pauperis*. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). *See generally Banks v. County of Allegheny*, 568 F. Supp. 2d 579, 587–89 (W.D. Pa. 2008) (summarizing prisoner litigation screening procedures and standards). "The court's obligation to dismiss a complaint under [these] screening provisions is not excused even after defendants have filed a motion to dismiss." *Id.* at 589. In performing this mandatory screening function, a district court applies the same standard applied to motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *Mitchell v. Dodrill*, 696 F. Supp. 2d 454, 471 (M.D. Pa. 2010); *Banks*, 568 F. Supp. 2d at 588.

## III. DISCUSSION

The plaintiff has asserted her federal civil rights claims against the following defendants:

> (1)    Dauphin County Work Release Center;

(2) Dauphin County Adult Probation;

(3) Bernard Adams, a county probation officer formerly assigned to the work release center;

(4) Alan Proper, a county probation officer;

(5) (first name unknown) Muza, a county probation officer;

(6) Marybeth (last name unknown), a supervisor at the work release center; and

(7) Annemarie (last name unknown), a county probation officer assigned to the electronic monitoring program.

The defendants have appeared jointly through counsel and moved for dismissal of the action as against the agencies and against the individual defendants in their official capacities only. They have not addressed Lawson's claims against the individual defendants in their personal capacities.

## A. Claim for Injunctive Relief

In addition to monetary damages, Lawson seeks an injunction terminating her supervision by the Dauphin County Adult Probation Office and the Dauphin County Work Release Center. Her supervision by the county probation office and her placement at the county work release

center are pursuant to multiple state criminal convictions and sentences. She does not merely challenge certain conditions of her sentence, but rather she seeks an order that would result in an immediate or speedier release from confinement, which may include IPP- or probation-based restrictions on her liberty. Such relief is not cognizable under 42 U.S.C. § 1983, but may only be obtained through a petition for a writ of habeas corpus under 28 U.S.C. § 2254. *See Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973); *Jones v. Cunningham*, 371 U.S. 236, 242–43 (1963); *D'Amario v. Weiner*, Civil Action No. 12-6098, 2014 WL 1340022, at *3–*6 (D.N.J. Apr. 3, 2014); *Shover v. York County*, Civil Action No. 3:CV-11-2248, at *2 n.4, *5–*6 (M.D. Pa. Jan. 25, 2012).

Accordingly, it is recommended that the plaintiff's claims for injunctive relief be dismissed without prejudice for lack of subject matter jurisdiction.[3]

## B. The State Agencies

The defendants seek dismissal of the action against Dauphin County

---

[3] The defendants did not raise this particular issue in their motion to dismiss, but federal courts have an obligation to address issues of subject matter jurisdiction *sua sponte*. *See Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010); *see also* Fed. R. Civ. P. 12(h).

Work Release Center and Dauphin County Adult Probation for lack of subject matter jurisdiction on Eleventh Amendment immunity grounds or, in the alternative, for failure to state a claim on the ground that neither of these state agencies is a "person" amenable to suit under 42 U.S.C. § 1983.[4]

The Eleventh Amendment provides a state and its agencies with immunity from suit in federal court unless the state expressly waives immunity or Congress abrogates the Eleventh Amendment in legislation designed to enforce the Fourteenth Amendment. *See generally Welch v. Tex. Dep't of Highways & Public Transp.*, 483 U.S. 468, 472–74 (1987). The Commonwealth of Pennsylvania has not waived its rights under the Eleventh Amendment, and Congress did not abrogate the Eleventh Amendment when enacting § 1983. *Hollihan v. Pa. Dep't of Corrs.*, 159 F. Supp. 3d 502, 510 (M.D. Pa. 2016); *see also* 42 Pa. Cons. Stat. § 8521(b); *Quern v. Jordan*, 440 U.S. 332, 338 (1979).

---

[4] Finding below that the Eleventh Amendment bars the exercise of subject matter jurisdiction with respect to these defendants, we need not reach the second issue, but we note that the Supreme Court has explicitly held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

The United States Court of Appeals for the Third Circuit has explicitly held that

> Pennsylvania's judicial districts, including their probation and parole departments, are entitled to Eleventh Amendment immunity. The Commonwealth vests judicial power in a unified judicial system, and all courts and agencies of the [unified judicial system] are part of the Commonwealth government rather than local entities. As an arm of the State, an individual judicial district and its probation and parole department are entitled to Eleventh Amendment immunity.

*Haybarger v. Lawrence Cty. Adult Probation & Parole*, 551 F.3d 193, 198 (3d Cir. 2008) (citations omitted). The defendants have further directed our attention to an administrative order by the Court of Common Pleas for Dauphin County, Pennsylvania, which clearly demonstrates that the Dauphin County Work Release Center is likewise a department of the judicial district and thus entitled to Eleventh Amendment immunity as an arm of the State. (Doc. 14-1).[5]

---

[5] As we noted above, "[i]n deciding a Rule 12(b)(1) facial attack, the court may . . . consider . . . matters of public record such as court records." *Medici*, 2010 WL 1006917, at *2. Based on this court record proffered by the defendants, we take judicial notice of the fact that the Dauphin County Work Release Center is a department of the Court of Common Pleas for Dauphin County, the 12th Judicial District of Pennsylvania. *See* Fed. R. Evid. 201; *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007); *Pennsylvania v. Brown*, 373 F.2d 771, 778 (3d Cir. 1967).

Accordingly, it is recommended that all claims against Dauphin County Adult Probation and Dauphin County Work Release Center be dismissed with prejudice on Eleventh Amendment immunity grounds.

## C. The Individual Defendants in Their Official Capacities

The defendants similarly seek dismissal of the action on the same grounds with respect to Lawson's damages claims against defendants Adams, Proper, Muza, Marybeth, and Annemarie to the extent that they are sued in their official capacities.[6]

All five of these individual defendants are employees of the Dauphin County Adult Probation Office or the Dauphin County Work Release Center. As discussed above, Eleventh Amendment immunity bars the recovery of monetary damages under § 1983 from these state agencies.

---

[6] It should be noted that the defendants have sought dismissal on these grounds—Eleventh Amendment immunity and failure to state a claim insofar as official capacity defendants are not "persons" under § 1983—only with respect to Lawson's damages claims. As the Supreme Court has noted, "a state official in his or her official capacity, when sued for injunctive relief, [is] a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'" *Will*, 491 U.S. at 71 n.10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985)). But, as previouslydiscussed, Lawson's claim for injunctive relief is limited to early termination of her criminal sentence to probation or IPP supervision, over which this we lack subject matter jurisdiction in a civil action, leaving only her claims for damages against these defendants.

This same immunity extends to Lawson's official capacity claims for monetary damages against Adams, Proper, Muza, Marybeth, and Annemarie. *Alegria v. Williams*, 314 Fed. App'x 687, 691 (O'Connor, Circuit Justice, 5th Cir. 2009) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978), and *Ford Motor Co. v. Dep't of Treasury*, 323 U.S. 459, 464 (1945)).

Accordingly, it is recommended that Lawson's official capacity claims for monetary damages against each of the individual defendants be dismissed with prejudice on Eleventh Amendment immunity grounds.

### D. Defendants Proper, Muza, Marybeth, and Annemarie in Their Personal Capacities

Liberally construed, Lawson's amended complaint also asserts federal civil rights claims for damages against each of the individual defendants in his or her personal capacity under 42 U.S.C. § 1983. Section 1983 provides a private cause of action with respect to the violation of federal constitutional rights. The statute provides in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured

in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not create substantive rights, but instead provides remedies for rights established elsewhere. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). To establish a § 1983 claim, a plaintiff must establish that the defendant, acting under color of state law, deprived the plaintiff of a right secured by the United States Constitution. *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995).

Lawson alleges that defendant Proper, her supervising probation officer, directed her to submit to an instant urine test, directed her to submit to a strip search by a female probation officer, and directed her to provide a second urine sample for a laboratory test. Without more, Lawson's allegation that Proper directed her to submit to urine testing to determine whether she had violated the conditions of her probation or IPP sentence fails to allege sufficient facts to plausibly state a Fourth Amendment claim. *See United States v. Duff*, 831 F.2d 176, 179 (9th Cir. 1987) (probation); *see also Portillo v. U.S. District Ct. for Dist. of Ariz.*, 15 F.3d 819, 823–24(9th Cir. 1994) (per curiam) (presentence release); *Hadden v. Jacobs*, Civil Action No. 90-0759, 1990 WL 26677, at *1 (E.D.

Pa. Mar. 12, 1990) (parole). Likewise, without additional facts, Lawson's cursory allegation that Proper directed her to submit to a strip search by a female probation officer fails to allege sufficient facts to plausibly state a Fourth Amendment claim. *See Taylor v. Epps*, Civil Action No. 3:14CV352 DPJ-FKB, 2015 WL 2371532, at *5 (S.D. Miss. May 18, 2015) (complaint failed to outline specific conduct); *Martin v. Arpaio*, No. CV 13-02639-PHX-DGC (SPL), 2014 WL 1827078, at *6 (D. Ariz. May 8, 2014) (complaint failed to allege specific facts about strip search); *see also Richmond v. City of Brooklyn Ctr.*, 490 F.3d 1002, 1008 (8th Cir. 2007) (reviewing established law with respect to strip searches).

Lawson alleges that defendant Muza made a subjectively offensive comment to her while she was meeting with her own probation officer, defendant Proper. She alleges that defendant Annemarie repeatedly threatened to have her incarcerated if she did not comply with the terms and conditions of her probation or IPP supervision under the electronic monitoring program. But allegations that a probation officer verbally harassed a probationer and threatened him or her with a probation violation are insufficient to state a claim for relief under § 1983. *Murry v. Oakland Cty. Probation*, No. 2:09-CV-011395, 2009 WL 1259722, at *3

(E.D. Mich. Apr. 29, 2009).

Lawson alleges that Marybeth and two investigators asked her questions about her relationship with defendant Adams in a courtroom, in front of the judge presiding over her revocation proceedings. Lawson appears to base her claim against Marybeth on her failure to investigate or take disciplinary action against Adams. (*See* Doc. 10, at 3). But "there is no constitutional right to the investigation or prosecution of another." *Sanders v. Downs*, 420 Fed. App'x 175, 180 (3d Cir. 2011) (per curiam).

The Third Circuit has instructed that if a civil rights complaint is vulnerable to dismissal for failure to state a claim, the district court must permit a curative amendment, unless an amendment would be inequitable or futile. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002). In this case, it is not clear that amendment would be futile with respect to the plaintiff's personal capacity claims against the individual defendants, nor is there any basis to believe it would be inequitable. It is therefore recommended that the plaintiff be granted leave to file a second amended complaint within a specified time period following partial dismissal of the amended complaint.

Accordingly, it is recommended that Lawson's personal capacity

claims for damages against defendants Proper, Muza, Annemarie, and Marybeth be dismissed *sua sponte* for failure to state a claim, with leave to file a second amended complaint within a specified time period following partial dismissal of the amended complaint.

### E. Defendant Adams in His Personal Capacity

Based on our review of the facts alleged in the amended complaint, and in the absence of the identification by the defendants of any particular pleading deficiencies with respect to her claims against defendant Adams, Lawson appears to have alleged sufficient facts to plausibly state a colorable federal civil rights claim against defendant Adams. *See generally Locke v. Haessig*, 788 F.3d 662 (7th Cir. 2015) (involving Fourteenth Amendment equal protection claims based on parole officer's sexual harassment of parolee); *Scott v. Mo. Dep't of Probation & Parole*, No. 1:07CV82 LMB, 2007 WL 3026899 (E.D. Mo. Oct. 15, 2007) (involving § 1983 claims based on probation officer's sexual harassment of probationer).

### IV.   RECOMMENDATION

For the foregoing reasons, we recommend that:

1.    The defendants' motion for partial dismissal of the amended

complaint (Doc. 13) be **GRANTED**;

2.    The plaintiff's request for injunctive relief be **DISMISSED without prejudice** for lack of subject matter jurisdiction;

3.    The plaintiff's claims against defendants Dauphin County Adult Probation and Dauphin County Work Release Center be **DISMISSED with prejudice** on Eleventh Amendment immunity grounds;

4.    The plaintiff's claims for damages against defendants Adams, Proper, Muza, Marybeth, and Annemarie in their *official* capacities be **DISMISSED with prejudice** on Eleventh Amendment immunity grounds;

5.    The plaintiff's claims for damages against defendants Proper, Muza, Marybeth, and Annemarie in their *personal* capacities be **DISMISSED** for failure to state a claim, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), with leave to file a curative amendment within a specified period following partial dismissal of the amended complaint;

6.    Defendant Adams be directed to respond to the amended complaint **within fourteen (14) days** after disposition of the motion, as

provided by Rule 12(a)(4)(A) of the Federal Rules of Civil Procedure; and

7.   The matter be remanded to the undersigned for further proceedings.

Dated: September 15, 2016          ___*s/ Joseph F. Saporito, Jr.*___
                                   JOSEPH F. SAPORITO, JR.
                                   United States Magistrate Judge

# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

LESLIE M. LAWSON,

       Plaintiff,

       v.

DAUPHIN COUNTY WORK
RELEASE, et al.,

       Defendants.

CIVIL ACTION NO. 1:15-cv-02450

(CALDWELL, J.)
(SAPORITO, M.J.)

## NOTICE

NOTICE IS HEREBY GIVEN that the undersigned has entered the foregoing Report and Recommendation dated September 15, 2016. Any party may obtain a review of the Report and Recommendation pursuant to Local Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or

recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.


Dated: September 15, 2016          ***s/ Joseph F. Saporito, Jr.***
                                   JOSEPH F. SAPORITO, JR.
                                   United States Magistrate Judge